Daniel Cooper (State Bar. No. 153576)
Layne Friedrich (State Bar No. 195431)
Michael J. Chappell (State Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: cleanwater@sfo.com

Andrew L. Packard (State Bar No. 168690)
Michael P. Lynes (State Bar No. 230462)
LAW OFFICES OF ANDREW L. PACKARD
319 Pleasant Street
Petaluma, California 94952
Telephone: (707) 763-7227
Facsimile: (707) 763-9227
Email: Andrew@Packardlawoffices.com

Counsel for Plaintiff
KLAMATH RIVERKEEPER

UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLAMATH RIVERKEEPER, a project of the Klamath Forest Alliance, a non-profit public benefit corporation organized under the laws of the State of California,<br><br>        Plaintiff,<br><br>    vs.<br><br>L. RYAN BRODDRICK, in his official capacity as DIRECTOR of CALIFORNIA DEPARTMENT OF FISH AND GAME, a state agency; and PACIFICORP, INC.;<br><br>        Defendants. | Case No. 2:07-cv-00593-FCD-GGH<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE;  ORDER GRANTING DISMISSAL WITH PREJUDICE [FRCP 41(a)(1)(A)(ii)].** |

Plaintiff Klamath Riverkeeper ("Plaintiff") and Defendants L. Ryan Broddrick,[1] in his official capacity as Director of the California Department of Fish and Game ("Director"), and PacifiCorp, Inc., (collectively "Defendants") (Plaintiff and Defendants are hereinafter collectively referred to as the "Parties") by and through their attorneys of record, hereby enter into this stipulation to dismiss with prejudice all of Plaintiff's claims and request to have the District Court retain jurisdiction for the sole purpose of enforcing the terms of the Settlement Agreement, incorporated herein and attached as Exhibit A to this stipulation and [proposed] Order, as specified below.

WHEREAS, on January 17, 2007, and March 20, 2007, Plaintiff provided Defendants with Notices of Violations and Intent to File Suit ("Notices") under Clean Water Act Section 505, 33 U.S.C. §1365 for alleged violation of Order No. R1-2000-17, NPDES No. CA0006688, I.D. No. 1A800520SIS, and associated Monitoring and Reporting Program, for the Iron Gate Salmon and Steelhead Hatchery located in Siskiyou County;

WHEREAS, on March 27, 2007, Plaintiff filed its Complaint against Defendants in this District Court, *Klamath Riverkeeper v. L. Ryan Broddrick, et al.,* Civil Case No. 2:07-cv-00593-FCD-GGH, and filed a Second Amended Complaint on July 20, 2007.  The Second Amended Complaint contains all of the allegations contained in Plaintiff's Notices;

WHEREAS, Plaintiff and Defendants, through their authorized representatives and without either adjudication of Plaintiff's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement Plaintiff's allegations as set forth in the Notices and Second Amended Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement") entered into by and between Plaintiff and Defendants is attached hereto as Exhibit A and incorporated by reference;

WHEREAS, this District Court has jurisdiction over the subject matter of the claims asserted by Plaintiff pursuant to the Clean Water Act Section 505(a), 33 U.S.C. § 1365(a), and 28 U.S.C. §§ 1331,

---

[1]  John McCamman is presently acting Director of the California Department of Fish and Game.

2201 and 2202; however, the Parties disagree regarding the scope and application of the protections of the Eleventh Amendment to the United States Constitution to this action, and the Parties retain and do not waive any arguments they may have in this regard.  To further settlement, and in the context of settlement only, the Parties agree that the District Court shall have jurisdiction to order prospective injunctive relief against the Director to comply with the settlement agreement if the Court finds that the Director has breached the settlement agreement, but the District Court shall not have jurisdiction to enforce paragraph 11 of the Settlement Agreement against the Director and shall not have jurisdiction over any claims against the Director for money damages.  Venue is proper in this judicial district pursuant to Clean Water Act Sections §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c);

WHEREAS, Defendant PacifiCorp waives any and all objections that it may have to the District Court retaining jurisdiction for the sole purpose of enforcing the terms of the Settlement Agreement.

WHEREAS, Defendant Director waives any and all objections that he may have to the District Court retaining jurisdiction for the sole purpose of enforcing the terms of the Settlement Agreement, except the District Court does not retain jurisdiction to enforce Paragraph 11 of the Settlement Agreement against the Director, and the District Court does not have jurisdiction over any claims against the Director for money damages or to order any retroactive injunctive relief; and

WHEREAS, Plaintiff submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice, and the forty-five (45) day review period set forth at 40 C.F.R. § 135.5 has expired.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the Parties that Plaintiff's claims, as set forth in the Notices and Second Amended Complaint, be dismissed with prejudice.  The Parties respectfully request an order from this District Court dismissing such claims with prejudice.  The Parties also request that this District Court maintain jurisdiction over the Parties for the sole purpose of resolving any disputes between the Parties with respect to enforcement of any provision of the Settlement Agreement.  The Parties disagree regarding the scope and application of the protections of the Eleventh Amendment to the United States Constitution to this action, and the Parties retain and do not waive any arguments they may have in this regard.  To further settlement,

1   and in the context of settlement only, the Parties agree that the District Court shall have jurisdiction to

2   order prospective injunctive relief against the Director to comply with the settlement agreement if the

3   Court finds that the Director has breached the settlement agreement, but the District Court shall not have

4   jurisdiction to enforce paragraph 11 of the Settlement Agreement against the Director and shall not

5   have jurisdiction over any claims against the Director for money damages.

6   Dated:  21 January 2008                          LAWYERS FOR CLEAN WATER, INC.

7

8                                                    /s/ Daniel Cooper

9                                                    _____
                                                     Daniel Cooper
10                                                   Attorneys for Plaintiff
                                                     KLAMATH RIVERKEEPER

11  Dated:                                           CALIFORNIA ATTORNEY GENERAL

12

13                                                   /s/ Daniel M. Fuchs

                                                     _____
14                                                   Tracy L. Winsor
                                                     Daniel M. Fuchs
15                                                   Deputy Attorney Generals
                                                     Attorneys for Defendant L. RYAN
16                                                   BRODDRICK, in his official capacity as
                                                     DIRECTOR for the CALIFORNIA
17                                                   DEPARTMENT OF FISH & GAME

18  Dated:  January 18, 2008                         DOWNEY BRAND LLP

19

20                                                   /s/ Nicole E. Granquist

21                                                   _____
                                                     Nicole E. Granquist
22                                                   Attorney for Defendant
                                                     PACIFICORP, INC.

23

24

25  ///

26  ///

27  ///

28  ///

## **ORDER**

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff Klamath Riverkeeper's claims against Defendants L. Ryan Broddrick, in his official capacity as Director of the California Department of Fish and Game, and PacifiCorp, Inc., as set forth in the Notices and Second Amended Complaint filed in Civil Case No. 2:07-cv-00593-FCD-GGH, are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the District Court shall retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss With Prejudice as Exhibit A, except the District Court does not retain jurisdiction to enforce Paragraph 11 of the Settlement Agreement against the Director, does not have jurisdiction over any claims against the Director for money damages, and can order prospective injunctive relief against the Director to comply with the settlement agreement if the Court finds that the Director has breached the settlement agreement.

IT IS SO ORDERED

DATED: January 24, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**

**I.   RECITALS**

WHEREAS, Klamath Riverkeeper is a project of the Klamath Forest Alliance, a non-profit public benefit corporation organized under the laws of the State of California, and maintains its main office in Orleans, California and a mailing address of P.O. Box 21, Orleans, California 95556.  Klamath Riverkeeper has approximately forty members who live and/or recreate in and around the Klamath River.  Klamath Riverkeeper's mission is to preserve, protect, and defend the environment, wildlife and natural resources of the Klamath River.  To further these goals, Klamath Riverkeeper actively seeks Federal and State agency implementation of the Federal Water Pollution Control Act, 33 U.S.C. 1251 *et seq.* ("Clean Water Act"), and, where necessary, directly initiates enforcement actions on behalf of itself and its members;

WHEREAS, John McCamman is now acting Director of the California Department of Fish and Game ("Director"), a state agency organized under the laws of the State of California.  The California Department of Fish and Game operates the Iron Gate Salmon and Steelhead Hatchery ("the Iron Gate Hatchery") located at 8636 Lakeview Road in Hornbrook, California;

WHEREAS, PacifiCorp, Inc. is a corporation organized under the laws of the State of Oregon.  PacifiCorp, Inc. owns the Iron Gate Hatchery and funds approximately 80% of the Iron Gate Hatchery's operation and maintenance;

WHEREAS, on January 17, 2007, Klamath Riverkeeper provided written notice to L. Ryan Broddrick, then Director of the California Department of Fish and Game, and PacifiCorp, Inc. ("Defendants") of alleged violations of the Clean Water Act and of Klamath Riverkeeper's intention to file suit for such alleged violations ("First Notice Letter").  The First Notice Letter alleges, among other things, violations of the Effluent Limits, as well as the Monitoring and Reporting Program requirements, of Order No. R1-2000-17, NPDES No. CA0006688, I.D. No. 1A800520SIS, "Waste Discharge Requirements General Order for State of California Department of Fish & Game and Pacificorp Iron Gate Hatchery" ("Order No. R1-2000-17").  Klamath Riverkeeper's Second Amended Complaint

alleges that the First Notice Letter was also provided to the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region IX, the Executive Director of the California State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"), and the U.S. Department of Justice ("DOJ") as required by the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A);

WHEREAS, on or about March 20, 2007, Klamath Riverkeeper provided a second written notice to Defendants of additional alleged violations of the Clean Water Act and Order No. R1-2000-17, and of Klamath Riverkeeper's intention to file suit for such violations ("Second Notice Letter").  The Second Notice Letter alleges, among other things, that Defendants discharge effluent containing detectable levels of chemicals used for the treatment and control of disease and discharge waste resulting from cleaning activities at the Iron Gate Hatchery to the Klamath River in violation of Discharge Prohibitions A(2) and A(3) of the Permit.  Klamath Riverkeeper's Second Amended Complaint alleges that the Second Notice was also provided to the Administrator of the EPA, the Regional Administrator of EPA Region IX, the Executive Director of the State Board, the Executive Officer of the Regional Board, and the DOJ as required by the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A);

WHEREAS, on March 27, 2007, after more than the requisite sixty (60) days had passed since the First Notice Letter was issued to Defendants and pursuant to the Act, Klamath Riverkeeper initiated this action and filed a complaint to allege the claims and alleged violations set forth in the First Notice Letter;

WHEREAS, on July 20, 2007, Klamath Riverkeeper filed a Second Amended Complaint alleging the claims and alleged violations set forth in the First and Second Notice Letters; and

WHEREAS, Klamath Riverkeeper and the Defendants (collectively referred to herein as the "Parties" and individually as a "party"), through their authorized representatives and without either adjudication of the Second Amended Complaint's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve this action by entering into this Settlement Agreement and Mutual Release of Claims ("Settlement Agreement" or "Agreement"), and avoid the costs and uncertainties of further litigation.

1    NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

2    **II.    COMMITMENTS**

3        1.   The Parties agree that this Settlement Agreement and all activities undertaken pursuant to

4    this Settlement Agreement shall be implemented in compliance with all applicable state laws,

5    regulations, orders and permits.

6    **A.    <u>Compliance with Order No. R1-2000-17 or any Renewed NPDES Permit for the Iron Gate</u>**
     **<u>Hatchery</u>**

7
8        2.   For the term of this Settlement Agreement, Defendants agree to comply with all terms and

9    conditions of Order No. R1-2000-17 until or unless a renewed NPDES permit for the Iron Gate

10   Hatchery is adopted, at which point Defendants agree to comply with the terms of the renewed NPDES

11   Permit for the Iron Gate Hatchery.

12   **B.    <u>Implementation of Monitoring and Reporting Program and Chemical Use Management</u>**
     **<u>Plan</u>**

13
14       3.   <u>Monitoring and Reporting Program</u>.  Within sixty (60) calendar days of the Effective Date of

15   this Settlement Agreement, Defendants agree to implement the proposed Monitoring and Reporting

16   Program ("MRP") that was submitted to the Regional Board on September 14, 2007, until a final MRP

     is issued by the Regional Board, at which point the final MRP will be implemented by Defendants.

17
18       4.   <u>Quarterly Monitoring Summary Report</u>.  For the term of this Settlement Agreement, the

19   California Department of Fish and Game will submit a Quarterly Monitoring Summary Report to

20   Klamath Riverkeeper summarizing the sampling results for Discharge 006 from the prior quarter for

21   chemicals (other than NaCl) used for treatment and control of disease.  The Quarterly Monitoring

22   Summary Report shall be due by February 28, May 30, August 31, and November 30 of each year this

23   Settlement Agreement is in effect, and shall include copies of the lab reports that provide the basis for

24   the sampling results.  The issuance of a renewed NPDES Permit for the Iron Gate Hatchery by the

25   Regional Board during the term of this Settlement Agreement shall not affect the Defendants' obligation

     to submit Quarterly Monitoring Summary Reports.

26       5.   <u>Chemical Use Management Plan</u>.  Within ninety (90) calendar days of submitting any

27   Quarterly Monitoring Summary Report to Klamath Riverkeeper that contains sampling results indicating

28

detectable levels of chemicals (other than NaCl) used for the treatment and control of disease from Discharge 006, Defendants shall submit to Klamath Riverkeeper a Chemical Use Management Plan that shall specify additional measures to be taken at the Iron Gate Hatchery designed to achieve compliance with Prohibition A.2. of Order No. R1-2000-17, any subsequent change to Prohibition A.2. of Order No. R1-2000-17, or limitation on the discharge of chemicals used for treatment and control of disease in any renewed NPDES Permit for the Iron Gate Hatchery issued by the Regional Board.  The issuance of a renewed NPDES Permit for the Iron Gate Hatchery by the Regional Board during the term of this Settlement Agreement shall not affect the Defendants' obligation to submit Chemical Use Management Plans pursuant to this section.

6.   <u>Contents of Management Action Plan</u>.  Each Chemical Use Management Plan shall set forth:

a.   A description of the sampling results;

b.   The possible sources of detectable levels of chemicals used for the treatment and control of disease;

c.   Evaluation of potential operational modifications at the Iron Gate Hatchery to reduce the levels of chemicals used for the treatment and control of disease;

d.   A reasonable schedule to implement recommended operational modifications, if any; and

e.   If Defendants recommend a "No Action" alternative, their reasons for so recommending.

In analyzing operational modifications at the Iron Gate Hatchery to reduce levels of chemicals used for treatment and control of disease (the "Modifications"), the Chemical Use Management Plan may consider the expected chemical reduction benefits of the Modifications, the costs of the recommended Modifications, the public agency approvals and permits needed to implement the Modifications, the time reasonably needed to implement the Modifications, the anticipated implementation date for the Modifications, and the anticipated water quality benefit(s) of the Modifications.

7.   Modifications to be considered as a part of a Chemical Use Management Plan may include, but are not limited to, the following:

a. <u>Egg Treatment Intervals</u>: alternative egg treatment intervals and frequency to minimize overall or peak chemical concentration.  This may require phased implementation and study to ensure that fish production levels are not detrimentally affected.

b. <u>Chemical Use Reduction</u>: reduction of chemical use, if feasible.  This may require phased implementation and study to ensure that fish production levels are not detrimentally affected.

c. <u>Fish Production</u>: reduction of fish production to reduce overall chemical use.  Any reduction proposed shall be consistent with the mitigation measures required by the Iron Gate Dam's operating license issued by the Federal Energy Regulatory Commission.

Within thirty (30) calendar days of receiving a Chemical Use Management Plan from Defendants, Klamath Riverkeeper may propose revisions to the Chemical Use Management Plan and explain in writing the basis for each such revision.  Within forty-five (45) calendar days of receiving Klamath Riverkeeper's proposed revisions to a Chemical Use Management Plan, Defendants shall accept each such proposed revision, accept a modified version of the proposed revision, or reject the proposed revision and explain in writing why they are rejecting or modifying any such proposed revision.

8. <u>Dispute Resolution Regarding Modifications</u>.  After exchange of documents described in Paragraph 7 above, any party may seek dispute resolution in accordance with Paragraphs 19-23 below if the Parties remain in dispute over any Modification recommended in any Chemical Use Management Plan.  The Chemical Use Management Plan will be deemed compliant with this Settlement Agreement unless Klamath Riverkeeper invokes dispute resolution.

9. <u>Implementation of Chemical Use Management Plan</u>.  After the Parties reach agreement as to the Modifications, or after dispute resolution resolves any dispute concerning such Modifications, Defendants shall immediately implement the agreed Chemical Use Management Plan.

10. <u>Amendment of Best Management Practices/Hatchery Management Plan</u>.  Within thirty (30) calendar days after the Parties reach agreement or dispute resolution proceedings conclude on the Modifications, Defendants shall amend the Iron Gate Hatchery's Best Management Practices to include

all agreed Modifications and shall request that the Regional Board change the Hatchery Management

Plan for the Iron Gate Hatchery to include all agreed Modifications not otherwise implemented and

included in the Best Management Practices and Hatchery Management Plan.  Within thirty (30) calendar

days thereafter, Defendants shall provide Klamath Riverkeeper with a copy of such revised Best

Management Practices and request to the Regional Board to change the Hatchery Management Plan.

    **C.**    **Supplemental Environmental Project**

        11. <u>Supplemental Environmental Project</u>.  As mitigation of the violations alleged in Klamath

Riverkeeper's Second Amended Complaint, PacifiCorp shall tender payment to the U.S. Fish & Wildlife

Service the sum of seventy thousand dollars ($70,000) within ten (10) calendar days of the expiration of

the DOJ and EPA's 45-day review period as provided in Paragraph 15 of this Settlement Agreement.

The funds shall be used by the U.S. Fish & Wildlife Service staff to fund the fish parasite study

described in Attachment A.

    **D.**    **Miscellaneous Commitments**

        12. <u>Document Provision</u>.  During the term of this Settlement Agreement, Defendants shall

provide Klamath Riverkeeper with a copy of all documents submitted to the Regional Board pertaining

to compliance with Order R1-2000-17 or the renewed NPDES Permit, and any change in ownership of

the Iron Gate Hatchery.  Such documents shall be transmitted to Klamath Riverkeeper via U.S. or

electronic mail at the time the documents are submitted to the Regional Board.

        13. <u>Site Inspections</u>.  For the term of this Settlement Agreement, Klamath Riverkeeper, its legal

counsel and/or other Klamath Riverkeeper representatives, may conduct a total of two site inspections at

the Iron Gate Hatchery ("Site Inspections").  Klamath Riverkeeper shall provide Defendants with seven

(7) calendar days notice prior to each Site Inspection.  During the Site Inspection, Klamath Riverkeeper

or its representatives may collect samples of discharges from the Iron Gate Hatchery provided the

following sampling protocols are met:

        a.    <u>Sampling locations</u>.  Klamath Riverkeeper may collect samples at Discharge 001

(the main trap just outside the spawning facility), 004, 005, and 006.

        b.    <u>Split samples</u>.  Klamath Riverkeeper agrees to provide split samples.

c.      Chemical constituents analyzed.  Klamath Riverkeeper agrees to orally list the chemical constituents or parameters Klamath Riverkeeper intends to analyze its samples for at the commencement of the Site Inspection.

d.      Plaintiff's representatives in attendance.  Klamath Riverkeeper agrees to provide Defendants with a list of expected attendees at the Site Inspection three business days prior to the date of the Site Inspection, and the designation of who will perform any sampling.

e.      Certified Laboratory.  Klamath Riverkeeper shall have the collected samples analyzed at a certified California laboratory.

14. Stipulation to Dismiss with Prejudice.  Within two (2) business days of the Effective Date of this Settlement Agreement, Klamath Riverkeeper will submit this Settlement Agreement to the District Court along with a Stipulation and [Proposed] Order in the form preceding this Settlement Agreement.

15. Review by Federal Agencies. Within two (2) business days of the Effective Date of this Settlement Agreement, Klamath Riverkeeper shall submit this Settlement Agreement to EPA and the DOJ for review consistent with 40 C.F.R. § 135.5.  The review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided by Klamath Riverkeeper to Defendants.  In the event that EPA or DOJ comments negatively on the provisions of this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## III.      FEES, COSTS AND EXPENSES

16. Fees Incurred as of the Effective Date of this Agreement.  To help defray Plaintiff's attorneys', consultant, and expert fees and costs, and any other costs incurred as a result of investigating, bringing this matter to Defendants' attention, and negotiating a settlement, the Director shall pay Plaintiff the sum of $70,000.00.  Payment shall be made by the earlier date of the following: (1) forty-five (45) calendar days after the expiration of the EPA and DOJ's 45-day review period as provided in Paragraph 15 of this Settlement Agreement if EPA and DOJ do not comment; or (2) forty-five (45) calendar days after receipt of the EPA and DOJ's comments on the Settlement Agreement, provided those comments are not negative and the parties are not meeting and conferring in accordance with Paragraph 15.  Payment shall be made to Klamath Riverkeeper's counsel in the form of a single check

payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129 and shall constitute full payment for all costs of litigation incurred by Klamath Riverkeeper that have or could have been claimed in connection with or arising out of Klamath Riverkeeper's lawsuit, up to and including the Effective Date.

17. <u>Fees and Costs Incurred after the Effective Date of this Agreement</u>. To help defray Klamath Riverkeeper's expert and attorneys' fees and costs spent reviewing Defendants' compliance with ongoing obligations under this Settlement Agreement, Defendants shall pay Plaintiff the sum of $5,000.00, with the Director and PacifiCorp each paying $2,500.00 of that sum.  Payment shall be made by the earlier date of the following: (1) forty-five (45) calendar days after the expiration of the EPA and DOJ's 45-day review period as provided in Paragraph 15 of this Settlement Agreement if EPA and DOJ do not comment; or (2) forty-five (45) calendar days after receipt of the EPA and DOJ's comments on the Settlement Agreement, provided those comments are not negative and the parties are not meeting and conferring in accordance with Paragraph 15.  Payment shall be made to Klamath Riverkeeper's counsel in the form of checks payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129 and shall constitute full payment for all costs of litigation incurred by Klamath Riverkeeper for reviewing Defendants' compliance with ongoing obligations under this Settlement Agreement.

## IV.   TERMINATION OF SETTLEMENT AGREEMENT

18. This Settlement Agreement will automatically terminate two (2) years after the Effective Date, except that the two (2) year termination date will be extended to the date after any dispute resolution process, commenced prior to the termination date, is completed or the date by which all Modifications required under a Chemical Use Management Plan have been implemented.

## V.   DISPUTE RESOLUTION PROCEDURES

19. The dispute-resolution procedure set forth in Section V of this Settlement Agreement shall be the exclusive mechanism for resolving disputes between the Parties with regard to any aspect of this Settlement Agreement.  The Parties may not initiate the formal dispute-resolution procedure set forth in Paragraph 21 until after District Court has entered an Order dismissing Plaintiffs' claims with prejudice.

20. <u>Informal Dispute Resolution/Meet and Confer</u>. For any disputes with regard to any aspect of this Settlement Agreement, the Parties agree to first engage in informal dispute resolution pursuant to the terms of this paragraph:

      a.     <u>Meet and Confer</u>.  If a dispute under this Settlement Agreement arises, or any party believes that a breach of this Settlement Agreement has occurred, the Parties shall meet and confer within five (5) business days of receiving written notification from a party of a request for such meeting.  During the meet and confer proceeding, the Parties shall discuss the dispute and make best efforts to devise a mutually agreed upon plan, including implementation dates, to resolve the dispute.

      b.     If either party fails to meet and confer or the meet and confer does not resolve the dispute, after at least ten (10) business days have passed after the meet and confer occurred or should have occurred, either party shall be entitled to initiate the formal dispute resolution procedures in Paragraph 21.

21. <u>Formal Dispute Resolution</u>.  If the meet and confer process provided for in Paragraph 20 of this Settlement Agreement has terminated and the Parties' dispute(s) has not been resolved, the Parties agree that their exclusive recourse is to file a motion before the District Court, to determine whether either party is in breach of this Settlement Agreement and, if so, to require the breaching party to remedy any breach identified by the District Court that is within the District Court's retained jurisdiction within a reasonable time frame.  The Parties disagree regarding the scope and application of the protections of the Eleventh Amendment to the United States Constitution to this action, and the Parties retain and do not waive any arguments they may have in this regard.  To further settlement, and in the context of settlement only, the Parties agree that the District Court shall have jurisdiction to order prospective injunctive relief against the Director to comply with the settlement agreement if the Court finds that the Director has breached the settlement agreement, but the District Court shall not have jurisdiction to enforce paragraph 11 of the Settlement Agreement against the Director and shall not have jurisdiction over any claims against the Director for money damages.

22. If a party seeks to invoke formal dispute resolution, the party shall provide all other Parties with written notice of its intent.  Within three (3) business days of receiving one party's notice to invoke

formal dispute resolution, the Parties agree to call the court clerk to schedule a hearing date that gives the responding party(ies) at least fourteen (14) business days to file its/their response(s) to the filed motion, and seven (7) business days for the moving party(ies) to file any reply. The District Court may consider any and all evidence, including, but not limited to, the position of the Regional Board or other state agency.  If Judge Damrell is not available to perform the role identified herein, the Parties agree that the dispute resolution process shall be re-assigned pursuant to applicable rules of the District Court.

23. <u>Court Ordered Relief</u>.  Nothing in this Settlement Agreement precludes any party from seeking relief authorized under the Local Rules or Federal Rules of Civil Procedure from the District Court for non-compliance with a District Court order issued following formal dispute resolution. Nothing in this Settlement Agreement shall be construed as an agreement by the Parties that any relief sought, including sanctions, are appropriate or authorized by law.  The Parties reserve their rights to take the position that any relief sought, including sanctions, are not appropriate or authorized by law.

24. <u>Fees for Disputes Presented to the District Court</u>.  If Klamath Riverkeeper is the prevailing party in a motion before the District Court, Defendants agree to pay Klamath Riverkeeper's reasonable costs and attorneys' fees incurred during the meet and confer and formal dispute resolution processes consistent with section 505 of the Clean Water Act, 33 U.S.C. § 1365.

## VI.   **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

25. In consideration of the above, upon the Effective Date of this Settlement Agreement, and for the term of this Settlement Agreement, the Parties hereby fully release, except for claims for the Defendants' failure to comply with this Settlement Agreement, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged Clean Water Act violations that were or could have been claimed in this action, known or unknown, up to and including the Effective Date of this Settlement Agreement.

26. Upon the Effective Date of this Settlement Agreement, Klamath Riverkeeper, on its own behalf and on behalf of its officers, directors, and employees and each of their successors and assigns and its agents, attorneys, and other representatives, covenants not to sue Defendants or their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or their

agents, attorneys and other representatives, or any other local, state, or federal agency or official, with respect to Defendants' compliance with Order R1-2000-17 or any renewed NPDES Permit for the Iron Gate Hatchery that arose before, or may arise during, the term of this Settlement Agreement

27.     The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from the allegations and claims as set forth in the Notice Letters and/or the Second Amended Complaint; specifically, for alleged violation of Order R1-2000-17.  Nothing in this Settlement Agreement limits or otherwise affects Klamath Riverkeeper's right to enforce compliance with the Clean Water Act, Order R1-2000-17, or any renewed NPDES Permit for the Iron Gate Hatchery after the termination date of this Settlement Agreement.

28. Nothing in this Settlement Agreement limits or otherwise affects Klamath Riverkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants.

## VII.   MISCELLANEOUS AND GENERAL PROVISIONS

29. No Admission or Finding.  The Parties are entering into this Settlement Agreement for the purpose of avoiding prolonged and costly litigation.  Neither this Settlement Agreement nor any payment pursuant to the Settlement Agreement shall constitute or be construed as a finding, adjudication, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

30. Jurisdiction of District Court.  The District Court shall retain jurisdiction for the sole purpose of enforcing the terms and conditions of this Settlement Agreement and to resolve disputes arising

hereunder as may be necessary or appropriate for the construction or execution of the Settlement

Agreement, up to and including the date of termination.  The Parties disagree regarding the scope and

application of the protections of the Eleventh Amendment to the United States Constitution to this

action, and the Parties retain and do not waive any arguments they may have in this regard.  To further

settlement, and in the context of settlement only, the Parties agree that the District Court shall

have jurisdiction to order prospective injunctive relief against the Director to comply with the settlement

agreement if the Court finds that the Director has breached the settlement agreement, but the District

Court shall not have jurisdiction to enforce paragraph 11 of the Settlement Agreement against the

Director and shall not have jurisdiction over any claims against the Director for money damages.

31. <u>Construction</u>.  The language in all parts of this Settlement Agreement shall be construed in

accordance with the law and according to its plain and ordinary meaning, except as to those terms

defined in the applicable NPDES Permits and the Clean Water Act, or specifically herein.

32. <u>Choice of Law</u>.  This Settlement Agreement shall be governed by the laws of the United

States, and where applicable, the laws of the State of California.

33. <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this

Settlement Agreement is held by a Court to be unenforceable, the validity of the enforceable provisions

shall not be adversely affected.

34. <u>Notices/Correspondence</u>.  All notices required herein or any other correspondence pertaining

to this Settlement Agreement shall be sent by regular, certified, or overnight mail, or by electronic mail,

as follows:

<u>If to Plaintiff:</u>

Daniel Cooper
Lawyers for Clean Water, Inc.
1004 O'Reilly Ave.
San Francisco, CA 94129
Email: cleanwater@sfo.com

Andrew Packard
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Email: Andrew@Packardlawoffices.com

With copies to:

Regina Chichizola
Klamath Riverkeeper
PO Box 28
Orleans CA 95568
Email: regina@klamathriver.org
If to Defendants:

For Department of Fish and Game:

Sonke Mastrup
Deputy Director
California Department of Fish and Game
1416 9th Street, Room 1208
Sacramento, CA  95814
Email: smastrup@dfg.ca.gov

Nancee Murray, Senior Staff Counsel
State of California Department of Fish and Game
Office of the General Counsel
1416 Ninth Street, Suite 1335
Sacramento, CA  95814
Email: Nmurray@dfg.ca.gov

Tracy Winsor, Deputy Attorney General
Dan Fuchs, Deputy Attorney General
Department of Justice
Office of the Attorney General
1300 I St., Ste 125
Sacramento, CA 94244-2550
Email: Tracy.Winsor@doj.ca.gov
Email: Daniel.Fuchs@doj.ca.gov

For PacifiCorp:

John Sample
Senior Counsel
PacifiCorp Energy
825 NE Multnomah, Suite 1500
Portland, OR 97232
Email: John.Sample@PacifiCorp.com

Managing Director
Hydro Resources
PacifiCorp Energy
825 NE Multnomah, Suite 1500
Portland, OR 97232

Nicole Granquist
Downey Brand LLP
555 Capitol Mall, 10th Floor
Sacramento, CA 95814
Email: ngranquist@downeybrand.com

Notifications of communications shall be deemed submitted three (3) calendar days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.  In addition, the Parties may agree to transmit documents electronically or by facsimile.

35. Effect of Settlement Agreement.  Plaintiff does not, by its consent to this Settlement Agreement, warrant or aver in any manner that the Defendants' compliance with this Settlement Agreement will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Settlement Agreement shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Settlement Agreement.

36. Counterparts.  This Settlement Agreement may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, facsimile, and/or .pdf copies of original signature shall be deemed to be originally executed counterparts of this Settlement Agreement.

37. Modification of the Settlement Agreement.  This Settlement Agreement, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

38. Full Settlement.  This Settlement Agreement constitutes a full and final settlement of this matter.

39. Integration Clause.  This is an integrated Settlement Agreement.  This Settlement Agreement is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Settlement Agreement.

40. <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Settlement Agreement, and to legally bind the party to its terms.

41. <u>Successors and Assigns</u>. The provisions of this Settlement Agreement apply to and bind the Parties, including any successors or assigns.

42. <u>Third Party Beneficiary Rights</u>.  The Parties do not intend to create in any other individual or entity the status of third party beneficiary, and this Settlement Agreement shall not be construed so as to create such status.  The rights, duties and obligations contained in this Settlement Agreement shall operate only between the Parties to this Settlement Agreement.  The provisions of this Settlement Agreement are intended only to assist the Parties in determining and performing their obligations under this Settlement Agreement.  The Parties to this Settlement Agreement intend and expressly agree that only Parties signatory to this Settlement Agreement shall have any legal or equitable right to seek to enforce this Settlement Agreement, to seek any remedy arising out of a party's performance or failure to perform any term or condition of this Settlement Agreement, or to bring an action for the breach of this Settlement Agreement.

43. <u>Validity of Agreement</u>.  The Parties agree to be bound by this Settlement Agreement and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

44. <u>Effective Date.</u>  The term "Effective Date," as used in this Settlement Agreement, shall mean the last date on which the signature of a party to this Settlement Agreement is executed.

45. <u>District Court Disapproval of Stipulation to Dismiss and/or Settlement Agreement.</u>  If for any reason the District Court should decline to approve the Parties' Stipulation to Dismiss and Settlement Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Stipulation to Dismiss and Settlement Agreement so that it is acceptable to the District Court.  If the Parties are unable to modify the Settlement Agreement in a mutually acceptable manner that is acceptable to the District Court, this Settlement Agreement shall immediately be null and void.

Date: _____                    _____
                                      Regina Chichizola,
                                      Klamath Riverkeeper

Date: _____   _____
                                  John McCamman in his official capacity as acting
                                  Director of the California Department of Fish and
                                  Game

Date: _____   _____
                                  Randy Landolt
                                  Managing Director
                                  PacifiCorp Energy

**APPROVED AS TO FORM**:               For DEFENDANTS:

                                  _____
                                  Tracy L. Winsor
                                  Daniel M. Fuchs
                                  Deputy Attorney General
                                  Attorney for Defendant L. Ryan Broddick

                                  _____
                                  Nicole Granquist
                                  Downey Brand LLP
                                  Attorney for Defendant Pacificorp, Inc.

                                  For PLAINTIFF:

                                  _____
                                  Daniel Cooper
                                  Lawyers For Clean Water, Inc.
                                  Attorney for Plaintiff Klamath Riverkeeper